UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

_____
                                   )
ROLL-N-LOCK CORPORATION,           )
                                   )
       Plaintiff,                  )
                                   )  CASE NO.:
v.                                 )
                                   )
BAK INDUSTRIES, INC., JULIAN MAIMIN,)
and LAURMARK ENTERPRISES, INC.,    )
                                   )
       Defendants.                 )
_____)

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Roll-N-Lock Corporation ("Roll N Lock"), by its undersigned attorneys, states for its Complaint against Bak Industries, Inc. ("Bak"), Julian Maimin ("Maimin"), and Laurmark Enterprises, Inc. ("Laurmark") (collectively, "Defendants"), upon knowledge with respect to its own acts and upon information and belief with respect to all other matters, as follows:

**PARTIES**

1.     Plaintiff, Roll N Lock, is a Florida corporation with its principal place of business at 915 South Dixie Highway East, Pompano Beach, Florida.  Roll N Lock was founded in 1992 and is in the business of manufacturing premium quality retractable truck bed covers.

2.     Upon information and belief, Defendant Bak is a California corporation, currently suspended by the State of California's Secretary of State, with its principal place

of business at 720 Jessie Street in San Fernando, California.  Bak is a competitor of Roll N Lock in the retractable truck bed cover marketplace.

3. Upon information and belief, Defendant Julian Maimin is an individual with an address of 720 Jessie Street in San Fernando, California.  Upon information and belief, Maimin is an owner of Bak and Laurmark.

4. Upon information and belief, Defendant Laurmark is a Texas corporation, with its principal place of business at 720 Jessie Street in San Fernando, California. Laurmark is a competitor of Roll N Lock in the retractable truck bed cover marketplace.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for all civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively.  In addition, supplemental jurisdiction over related State law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

6. Defendants are subject to personal jurisdiction in the State of Florida pursuant to section 48.193(1)(b) of the Florida long-arm statute, because Defendants have caused injury to Roll N Lock trademarks within the State; caused tortious injury to Roll N Lock's dealers within the State; because Defendants practice the unlawful conduct complained of herein, in part, within the State; because the unlawful conduct complained of herein causes tortious injury, in part, within the State; because the Defendants regularly do or solicit business within the State; because the Defendants regularly and systematically direct electronic activity into the State with the manifest intent of engaging

in business within the State, including the sale and/or offer for sale of products to Internet users within the State, as well as, upon information and belief, entry into contracts with residents of the State resulting in distribution of its products through dealers located in the State.  Moreover, Defendants Julian Maimin has applied for a trademark registration in the mark FOLD-N-LOCK in which he alleges that he has used the mark in commerce throughout the United States, including Florida.  Defendants allege that they have used the FOLD-N-LOCK mark in commerce throughout the United States, including Florida.

7. Similarly, because some of the Defendants' wrongful acts occurred in Florida, including the acts of fraud, tortious interference, and offering for sale and sale of products that infringe upon Roll N Lock's trademarks as discussed herein, venue is proper in this judicial district under 28 U.S.C. § 1391.  Furthermore, as explained herein, Roll N Lock has numerous dealers located in this venue.  The conduct complained of herein directly effects Roll N Locks dealers within this venue which in turn harms Roll N Lock.  As a result of Defendants' conduct as described herein, a substantial part of the events or omissions giving rise to the claims and damages suffered occurred in this district.

8. Moreover, Defendants have signed an agreement with Roll N Lock in which they agree that this Court is the proper jurisdiction and venue for adjudication of this dispute.

**FACTUAL BACKGROUND**

9. Roll N Lock has been using the ROLL N LOCK mark continuously in the retractable truck bed cover marketplace since 1992.

10. Roll N Lock is the owner of numerous registered trademarks, including, but not limited to, the following (hereinafter the "Roll N Lock Marks"):

| Reg. Number | Reg. Date | Mark | Goods/Services |
|---|---|---|---|
| 1825802 | March 8, 1994 | ROLL N LOCK & Design<br><br>◎ROLL·N·LOCK | Retractable truck bed cover |
| 3217962 | March 13, 2007 | ROLL-N-LOCK & Design<br><br>ROLL-N-LOCK | Retractable truck bed cover |

11. Said registrations identified above are incontestable and are in full force and effect.

12. Defendants are not, and never have been, authorized to use the Roll N Lock Marks.

13. Roll N Lock maintains an Internet website at rollnlock.com as a critical means of promoting its products. Roll N Lock's advertising and other promotional activities are intended to work in tandem with its Internet website, so that potential customers who learn of Roll N Lock through advertisements or other promotional activities can quickly and conveniently gain additional information about Roll N Lock through its rollnlock.com website. Additionally, its website allows a user to locate authorized Roll N Lock dealers close to the consumer's location.

14. Roll N Lock sells products directly to customers through its network of authorized Roll N Lock dealers, including several dealers located in this district.

15. Roll N Lock has and continues to designate significant resources to develop and maintain its products' national and international image. Through this market of authorized Roll N Lock dealers, Roll N Lock has fostered a recognized image of quality and customer support.

16. Roll N Lock engages in extensive advertising of its truck bed covers as a means of promoting its products and establishing goodwill. Through advertising and other promotional efforts, including its Internet website, Roll N Lock has ensured that its marks have become famous in the industry and with the consuming public.

17. Through Roll N Lock's superior products, extensive advertising, and commitment to customer service, Roll N Lock has created tremendous goodwill in the Roll N Lock Marks.

18. The goodwill created in the Roll N Lock Marks is critical to Roll N Lock's business success, its authorized dealer network, and is an invaluable asset to Roll N Lock.

**DEFENDANTS' MISCONDUCT**

19. Defendants, direct competitors of Roll N Lock in the truck bed cover marketplace, have embarked on a campaign of deception designed to improperly trade-off the goodwill in the Roll N Lock Marks, to create consumer confusion in the retractable truck bed cover marketplace, and to divert sales from Roll N Lock and its authorized dealers.

20. In early 2011, Roll N Lock learned that Defendant Bak was advertising and selling truck bed covers under the mark FOLD-N-LOCK.

21. The FOLD-N-LOCK mark is only 2 letters different than the ROLL-N-LOCK marks.

22. Defendants' use of the FOLD-N-LOCK mark is an obvious attempt to trade off the goodwill of the Roll N Lock Marks in the retractable truck bed cover marketplace and to cause confusion amongst consumers as to the source of sponsorship of the product.

23. Given Defendants' infringement of Roll N Lock Marks and the resulting confusion likely caused by a competitor's use of the FOLD-N-LOCK mark in the same sales channel that the Roll N Lock Marks were being used, Roll N Lock attempted to resolve this dispute by sending a demand letter to Defendants.

24. On March 2, 2011, Roll N Lock, through counsel, sent Defendants a letter demanding that they cease and desist from further use of the FOLD-N-LOCK mark.

25. Defendants, through counsel, responded to Roll N Lock's demand letter with a letter of its own on March 8, 2011.

26. In its response letter, Defendants, through counsel, wrote, "BAK is not selling truck covers, or any product, under the trademark FOLD N LOCK, or any similar trademark."

27. Assured by Defendants on March 8, 2011, that they were "not selling truck covers, or any product, under the trademark FOLD N LOCK, or any similar

trademark" in the retractable truck bed cover marketplace, Roll N Lock believed the matter had been resolved.

28. Unbeknownst to Roll N Lock, on or before February 7, 2012, Defendants again began trading off the goodwill of the Roll N Lock Marks and creating confusion in the retractable truck bed cover marketplace by registering the domain name, rollnlock.co.

29. The registration information for the rollnlock.co domain name lists Maimin personally as the "Registrant" of the domain name. The registrant of a domain name owns and controls the domain name.

30. The registration information for the rollnlock.co domain name lists Bak as the "Registrant Organization" of the domain name.

31. Both Maimin personally, and Bak as an organization, registered, used, had ownership rights in, and controlled the rollnlock.co domain name.

32. The registration information for the rollnlock.co domain name lists Julian@bakliner.com as the email address associated with the registration of the rollnlock.co domain name.

33. Defendants' rollnlock.co domain name is identical to Plaintiff's rollnlock.com domain name except for the extra letter "M" at the end of Plaintiff's domain name.

34. Given the similarities between the domain names, it is clear that Defendants intend to direct individuals who are searching for Roll N Lock truck bed covers to their own competing brand of truck bed covers.

35. Additionally, Defendants are squatting on the domain name to prevent Roll N Lock from acquiring its name as a domain name under the new ".co" top level domain.

36. Learning of the second instance of blatant infringement of the Roll N Lock Marks, Roll N Lock filed a lawsuit on April 6, 2012.

37. In investigating which other domain names Defendants may have registered that infringe upon the Roll N Lock Marks, it was learned that Defendants had also registered the domain name foldnlock.com.

38. Registration information on the foldnlock.com domain name suggests that this domain name has been owned by Defendants since April 5, 2007 – i.e. years before Defendants sent Roll N Lock a letter assuring Roll N Lock that they were not using the FOLD-N-LOCK mark in any manner whatsoever.

39. As a result, Roll N Lock demanded (again) that Defendants cease use of the FOLD-N-LOCK mark.

40. In response, Defendants, on April 26, 2012, during settlement negotiations involving this matter and presumably to gain an advantage in this litigation and settlement, filed a trademark registration application with the United States Patent and Trademark Office ("USPTO") applying for trademark rights in the FOLD-N-LOCK mark.

41. Despite its letter of March 8, 2011, in which Defendants stated they were "not selling truck covers, or any product, under the trademark FOLD N LOCK, or any similar trademark," Defendants filed papers, signed under oath by attorney John J.

Skinner, with the USPTO stating that Defendants had been using the FOLD-N-LOCK mark since April 5, 2007 – the same day the foldnlock.com domain name was registered.

42. Defendants' filings with the USPTO, signed under oath, are directly contradicted by their letter to Roll N Lock dated March 8, 2011 in which they state that they are "not selling truck covers, or any product, under the trademark FOLD N LOCK, or any similar trademark."

43. Defendants either purposefully lied and misled Roll N Lock so that they might continue their covert, nefarious attempts to trade off the goodwill of Plaintiff and confuse consumers *or* Defendants have made false and fraudulent filings before the USPTO.

44. In either instance, Roll N Lock files this Complaint to put an end to Defendants' improper and infringing conduct.

## COUNT I
### Anticybersquatting Consumer Protection Act
### (15 U.S.C. § 1125(d))

45. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

46. Roll N Lock engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the Roll N Lock Marks, throughout the United States.

47. The Roll N Lock Marks, relating to Roll N Lock's truck bed cover business, have been, and will continue to be, known throughout the United States as identifying and distinguishing Roll N Lock's truck bed cover business.

48. Without authorization or consent, Defendants incorporated the Roll N Lock Marks into the domain name, www.rollnlock.co, which directed users to a "link farm" of competing truck bed cover manufacturers and dealers.

49. After the April 6 lawsuit was filed, Defendants removed the "link farm" from the domain name demonstrating their ability to control content on the page.

50. Defendants have registered, used, and/or trafficked in a domain name that is confusingly similar and virtually identical to the Roll N Lock Marks within the meaning of 15 U.S.C. § 1125(d).

51. At the time of Defendants' registration of rollnlock.co, the Roll N Lock Marks were distinctive within the meaning of 15 U.S.C. § 1125(d).

52. Defendants' use of the rollnlock.co domain name as a link farm deriving revenue through the Google adword / adsense program(s) is a bad faith intent to profit from the Roll N Lock Marks within the meaning of 15 U.S.C. § 1125(d).

53. Defendants' squatting on the domain name to prevent its competitor Roll N Lock from acquiring its name as a domain name under the new ".co" top level domain as a means of acquiring a competitive edge in the truck bed cover marketplace is a bad faith intent to profit within the meaning of 15 U.S.C. § 1125(d).

54. As Roll N Lock's domain name is the primary way consumers may locate a Roll N Lock authorized dealer, Defendants' use of the rollnlock.co domain name causes substantial harm to Roll N Lock and its dealers, including dealers located in this district.

55. Roll N Lock has been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby, and, unless their conduct is

enjoined, Roll N Lock's reputation, goodwill, and authorized dealer network will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Roll N Lock is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

56. By their bad faith use of a domain name that is confusingly similar or substantially identical to the Roll N Lock Marks, Defendants are liable for three times Defendants' profits and three times Roll N Lock's damages pursuant to 15 U.S.C. § 1117(a).

57. In the alternative, by their bad faith use of a domain name that is confusingly similar to or substantially identical to the Roll N Lock Marks, at Roll N Lock's election, at any time before final judgment, Defendants are liable for an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, pursuant to 15 U.S.C. § 1117(d).

58. By their bad faith use of a domain name that is confusingly similar to or substantially identical to the Roll N Lock Marks, Defendants are liable for the costs of this action, pursuant to 15 U.S.C. § 1117(a).

59. Because their bad faith is exceptional, the Court may award attorneys' fees to Roll N Lock, pursuant to 15 U.S.C. § 1117.

## COUNT II
### Unfair Competition and False Designation of Origin
### (15 U.S.C. § 1125(a))

60. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

61. Roll N Lock engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the Roll N Lock Marks, throughout the United States.

62. The Roll N Lock Marks, relating to Roll N Lock's truck bed cover business, have been, and will continue to be, known throughout the United States as identifying and distinguishing Roll N Lock's products and services.

63. By engaging in an online campaign to siphon off Roll N Lock's truck bed cover customers and convert them to customers of Defendants, Defendants are engaging in unfair competition, falsely designating the origin of their goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, Roll N Lock and its goods and services in violation of 15 U.S.C. § 1125(a).

64. By selling and advertising truck bed covers under the FOLD-N-LOCK mark and registering the domain names rollnlock.co and foldnlock.com, Defendants are engaging in unfair competition, falsely designating the origin of their goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, Roll N Lock and its goods and services in violation of 15 U.S.C. § 1125(a).

65. By selling and advertising truck bed covers under the FOLD-N-LOCK mark and registering the domain names rollnlock.co and foldnlock.com, Defendants are using the Roll N Lock Marks or a confusingly similar designation in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without Roll N Lock's consent.  Defendants are falsely designating the origin of their goods and services and/or falsely representing sponsorship by, affiliation with, or

connection to, Roll N Lock and its goods and services in violation of 15 U.S.C. § 1125(a). Accordingly, Roll N Lock is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

66. By selling and advertising truck bed covers under the FOLD-N-LOCK mark and registering the domain names rollnlock.co and foldnlock.com, Defendants are diluting the value of the Roll N Lock Marks and damaging Roll N Lock's relationships with its dealers. As Roll N Lock's marks are damaged by Defendants' conduct, dealers are less likely to stock and sell Roll N Lock's products resulting in lost sales to Roll N Lock and lost value in the Roll N Lock authorized dealer network that Roll N Lock has worked so diligently to create and foster.

67. Roll N Lock has been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby, and, unless their conduct is enjoined, Roll N Lock's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Roll N Lock is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

<u>COUNT III</u><br>
<b>Federal Trademark Infringement</b><br>
<b>(15 U.S.C. § 1114)</b>

68. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

69. By selling and advertising truck bed covers under the FOLD-N-LOCK mark and registering the domain names rollnlock.co and foldnlock.com, Defendants have

used in commerce a reproduction, counterfeit, copy, or colorable imitation of the Roll N Lock Marks in connection with the sale, offering for sale, distribution, and advertising of retractable truck bed covers in a manner that is likely to cause confusion, mistake or deception in violation of 15 U.S.C. § 1114.

70. By selling and advertising truck bed covers under the FOLD-N-LOCK mark and registering the domain names rollnlock.co and foldnlock.com, Defendants are diluting the value of the Roll N Lock Marks and damaging Roll N Lock's relationships with its dealers. As Roll N Lock's marks are damaged by Defendants' conduct, dealers are less likely to stock and sell Roll N Lock's products resulting in lost sales to Roll N Lock and lost value in the Roll N Lock authorized dealer network that Roll N Lock has worked so diligently to create and foster.

71. Roll N Lock has been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby, and, unless their conduct is enjoined, Roll N Lock's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Roll N Lock is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT IV
### Fraud, Misrepresentation and Deceit

72. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

73. In a letter dated March 8, 2011, Defendants, through counsel, wrote, "BAK is not selling truck covers, or any product, under the trademark FOLD N LOCK, or any similar trademark."

74. This letter is contradicted by Defendants' trademark application filed under oath with the USPTO stating that they have been using the FOLD-N-LOCK mark continuously since 2007.

75. Based upon Defendants' representation that they were not using the FOLD-N-LOCK mark, Plaintiff incurred substantial cost designing and developing a marketing plan around the FOLD-N-LOCK mark relying on the information that Defendants were not using the mark.

76. Since Defendants' letter of March 8, 2011, Plaintiff has incurred substantial cost promoting the Roll N Lock Marks to both the public and its authorized dealer network believing and relying on the fact that their marks were not being infringed upon by Defendants' use of the FOLD-N-LOCK mark.

77. Roll N Lock has been, and continues to be, damaged by its reliance on Defendants' fraud, misrepresentation and deceit.

## COUNT V
**Tortious Interference with Roll N Locks' Authorized Dealer Network**

78. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

79. Roll N Lock sells products directly to customers through its network of authorized Roll N Lock dealers, including dealers located in this district.

80. As a result, Roll N Lock has an advantageous business relationship with its authorized dealers.

81. At all times, Defendants' were aware of this relationship as said relationships are generally known throughout the retractable truck bed cover marketplace

and as Defendants are direct competitors of Roll N Lock in the retractable truck bed cover marketplace.

82. Roll N Lock has and continues to designate significant resources to its authorized dealer network. Roll N Lock's authorized dealer network allows it to foster and maintain its products' national and international image.

83. It efforts have been successful and through this market of authorized dealers, Roll N Lock has fostered a recognized image of quality and customer support in the eyes of consumers.

84. Through their registration of confusingly similar domain names, a consumer's primary means of locating a Roll N Lock dealer, Defendants have interfered with Roll N Lock's dealer network. Instead of locating a Roll N Lock dealer to purchase a retractable truck bed cover through, customers, through Defendants' domain names, were directed to either a "link farm" of competing dealers or to the Defendants' homepage selling a competing product.

85. Through their alleged use of the FOLD-N-LOCK mark, Defendants have interfered with Roll N Lock's dealer network. Due to the confusion caused by said use by the Defendants, Plaintiff's Roll N Lock Marks have been damaged. The goodwill associated with the Roll N Lock Marks is vital to securing and maintaining dealers in the marketplace. Dealers are less likely to become Roll N Lock dealers if the brand image Roll N Lock has worked so tirelessly to create, is damaged by the infringing use of the FOLD-N-LOCK mark by the Defendants.

86. As a result of Defendants' unjustified and intentional interference with Roll N Locks' advantageous business relationship, it has been, and continues to be, damaged.

## COUNT VI
### Violation of Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. § 501.201, *et seq*.)

87. Roll N Lock realleges and incorporates by reference each of the previous allegations of the Complaint as set forth above.

88. By engaging in an online campaign to siphon off Roll N Lock's truck bed cover customers and convert them to customers of Defendants and by selling and advertising truck bed covers under the infringing FOLD-N-LOCK mark, by registering the domain names rollnlock.co and foldnlock.com, and by tortiously interfering with Roll N Lock's authorized dealer network, Defendants' actions constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.201 *et seq*. (the Florida Deceptive and Unfair Trade Practices Act).

89. By sending Roll N Lock a letter stating that it was not using the FOLD-N-LOCK mark in 2011 and then filing papers with the USPTO in which it states under oath that it has been using the mark continuously since 2007, Defendants have committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act.

90. As a direct and proximate result of Defendants' unfair and deceptive trade practices as described throughout this Complaint, Roll N Lock has been injured, for

which there exists no adequate remedy at law, and Roll N Lock is entitled to recover its actual damages, costs, and attorney's fees.

**WHEREFORE**, Roll N Lock respectfully requests that this Honorable Court:

1. Issue a preliminary injunction and permanent injunction preventing Defendants from using the Roll N Lock Marks and any confusingly similar designations and requiring Defendants to discontinue their current infringing practices;

2. Issue a preliminary injunction and permanent injunction preventing Defendants from using the FOLD-N-LOCK mark and any confusingly similar designations and requiring Defendants to discontinue their current infringing practices;

3. Enter judgment in favor of Roll N Lock on the counts asserted herein and award damages;

4. Award Roll N Lock the costs incurred in bringing this action;

5. Pursuant to the powers granted it under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501-201 *et seq.*, award damages, punitive damages, costs, and attorneys' fees because of the Defendants' deceptive and fraudulent conduct as described herein;

6. Award Plaintiff, Roll N Lock, damages reflecting Plaintiff's actual damages and any profits the Defendants have made as a result of their infringement of Plaintiff's Roll N Lock Marks, and due to the exceptional nature of the violations, any such damages be trebled, and attorneys' fees be awarded, all as provided for under 15 U.S.C. § 1117;

7. Award Plaintiff, Roll N Lock, damages reflecting Plaintiff's actual damages and any profits the Defendants have made as a result of their interference with Roll N Lock's authorized dealer network;

8. Award Plaintiff, Roll N Lock, statutory damages for violation of the Anticybersquatting Consumer Protection Act, in an amount to be determined by jury, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1117(d);

9. Award Plaintiff, Roll N Lock, its actual damages or Defendants' profits for violation of the Anticybersquatting Consumer Protection Act and the Lanham Act, including punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1117;

10. Order Defendants to transfer immediately and unconditionally the foldnlock.com domain name, and any other infringing domain names held by the Defendants, to Plaintiff Roll N Lock;

11. Award the Plaintiff pre-judgment and post-judgment interest in the maximum amount allowed under the law; and

12. Grant Plaintiff such other further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: November 26, 2012

                                        */s/ Virginia L. Gulde*
Virginia L. Gulde (FL Bar # 50805)
Nelson Mullins Riley & Scarborough LLP
3600 Maclay Blvd., S., Suite 202
Tallahassee, FL  32312-1267
Telephone:  850.907.2592
Fax:  950.907.2501
virginia.gulde@nelsonmullins.com

*/s/ Morgan Nickerson*
Morgan Nickerson (BBO #667290)
Morgan.nickerson@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
Telephone:  573.573.4700
Fax:  617.573.4710
morgan.nickerson@nelsonmullins.com

*Attorneys for* **Roll-N-Lock Corporation**